UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICOLO MANGIARACINA and
CHANDA MANGIARACINA,

    Plaintiffs,

v.                                  Case No: 8:14-cv-1166-T-36MAP

ORANGE LAKE COUNTRY CLUB, INC.
and ORANGE LAKE COUNTRY CLUB
VILLAS CONDOMINIUM
ASSOCIATION II, INC.,

    Defendants.
_____/

# **O R D E R**

This cause comes before the Court upon the Motion to Dismiss the Verified Amended Complaint and Motion to Strike the Demand for Declaratory Judgment and/or Declaratory Relief, filed by Defendants Orange Lake Country Club, Inc., a/k/a Orange Lake Resorts, d/b/a Orange Lake Capital Management ("Orange Lake") and Orange Lake Country Club Villas Condominium Association II, Inc. ("Condominium Association") (collectively, "Defendants") (Doc 13). Plaintiffs Nicolo Mangiaracina ("Nicolo") and Chanda Mangiaracina ("Chanda") (collectively, "Plaintiffs") responded in opposition to the Motion (Doc. 20). Defendants replied in further support of their Motion (Doc. 25). The Court, having considered the motion and being fully advised in the premises, will now DENY Defendants' Motion.

**I.    STATEMENT OF FACTS**[1]

This dispute arises over the actions taken by Defendants to collect a debt, specifically a balance allegedly owed on a consumer timeshare account (the "Debt"). The Complaint alleges as follows: Orange Lake is a for-profit corporation that extends credit to consumers through the purchase of timeshare interests and the servicing of those loans. Doc. 6 ("Compl.") ¶ 5. Condominium Association is a non-profit corporation that collects maintenance and assessment fee debts. *Id.* ¶ 6. At no relevant time did Defendants have prior express consent to call either Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS"), predictive telephone dialing system ("PTDS"), or an artificial or pre-recorded voice ("APV"). *Id.* ¶ 19. Around July 2013, Plaintiffs retained counsel to represent them with regard to the Debt. *Id.* ¶ 17. Plaintiffs' counsel sent Defendants a certified letter dated July 13, 2013, giving Defendants notice of his representation of Plaintiffs and advising that all future communication should be directed to counsel's office. *Id.* ¶ 18; Ex. A1-A3 to Compl.

Defendants nevertheless contacted Plaintiffs directly, at times using an ATDS, PTDS, or APV, as follows: On July 25, 2013, Orange Lake, itself and/or on behalf of Condominium Association, placed four calls to Plaintiffs in an attempt to collect the Debt: one to Nicolo's cellular telephone using an ATDS, PTDS, or APV; one to Chanda's cellular telephone using an ATDS, PTDS, or APV; one to Nicolo's place of employment; and one to Chanda's place of employment. Compl. ¶¶ 23, 26, 29, 32. Voice mails were left on each Plaintiff's cellular telephone. *Id.* ¶¶ 25, 28. These same calls and voice mails were repeated the next day. *Id.* ¶¶ 34, 36, 37, 39, 40, 43.

---

[1] The following statement of facts is derived from Plaintiffs' Verified Amended Complaint (Doc. 6), the allegations of which the Court must accept as true in ruling on Defendants' Motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

On July 28, Orange Lake, itself and/or on behalf of Condominium Association, again attempted to contact Plaintiffs, twice calling each Plaintiff's cellular telephone using an ATDS, PTDS, or APV and leaving voice mails after each of those calls, and twice contacting each Plaintiff's place of work. *Id.* ¶¶ 45, 47, 48, 50, 51, 54. The next day, Orange Lake, itself and/or on behalf of Condominium Association, again called each Plaintiff's cellular telephone and place of work, and left voice mails on each Plaintiff's cellular telephone. *Id.* ¶¶ 56, 58, 59, 61, 62, 65. These calls continued approximately every other day until August 12th. *Id.* ¶ 67.

On August 12, 2013, Plaintiffs' counsel sent Defendants an email notifying Defendants that Plaintiffs' counsel was aware of the continued calls, and again advised Defendants that Plaintiffs were represented by counsel and that Defendants should direct all future communications to counsel's office. *Id.* ¶ 68. Lea Ladd, Defendants' employee or representative, responded by assuring Plaintiffs' counsel that there would be no further communications with Plaintiffs. *Id.* ¶ 69; Ex. B1-B2 to Compl. Despite this assurance, on March 11, 2014, Defendants sent Plaintiffs a letter in an attempt to collect the Debt. Compl. ¶ 70, Ex. C1-C2 to Compl.

Plaintiffs responded by filing the instant lawsuit, asserting four Counts in their Verified Amended Complaint. Counts I and II allege that Defendants violated the Florida Consumer Collection Practices Act ("FCCPA"), specifically Florida Statutes §§ 559.72(7) and 559.72(18), respectively. Counts III and IV allege that Defendants negligently (Count III) and willfully (Count IV) violated the Telephone Consumer Protection Act ("TCPA"), specifically 47 U.S.C. § 227(b)(1)(A). Plaintiffs seek, *inter alia*, actual, statutory, and punitive damages, as well as declaratory and injunctive relief. Defendants now move the Court to dismiss the Verified Amended Complaint, as well as to strike the demand for declaratory relief.

## II. LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

## III. DISCUSSION

### A. Whether the Allegations Improperly Combine Defendants (All Counts)

Defendants first argue that the Verified Amended Complaint should be dismissed because Plaintiffs have improperly lumped Defendants together in their allegations. Specifically, Defendants note that although Plaintiffs have alleged that Orange Lake and Condominium Association are separate entities, Plaintiffs simply assert that "Defendants" undertook certain unlawful actions without specifying precisely which Defendant undertook which action.

Defendants' argument is unpersuasive. The pleadings state that "[*Orange Lake*]*, itself and/or on behalf of* [*Condominium Association*]," made each of the alleged telephone calls. *See, e.g.*, Compl. ¶¶ 23, 26, 29, 32, 34, 37, 40, 43, 45, 48, 51, 54, 59, 62, 65, 67, 105. It is hard to imagine, and Defendants have not shown, how these allegations could be more specific as to each Defendant's role in carrying out the allegedly unlawful debt-collection activities. Further,

4

although there are some instances in which Plaintiffs refer to Orange Lake and Condominium Association collectively as "Defendants," *see, e.g.*, Compl. ¶¶ 90, 92, 97, 98, 102, 110, 112, 114, it is clear, in context, how these allegations apply to each of the Defendants. For example, although Paragraph 92 alleges that "*Defendants* repeatedly called both Plaintiffs' Cellular Telephones and places of employment," this allegation clearly refers to the calls made by Orange Lake, itself and/or on behalf of Condominium Association. Requiring Plaintiffs to replace the word "Defendants" with "Orange Lake, itself and/or on behalf of Condominium Association" would not increase the clarity of the pleadings, nor would it give Defendants any better notice of the allegations against them. Indeed, Defendants have failed to set forth any examples as to how Plaintiffs' pleadings have prevented them from understanding the claims asserted against them or adequately responding to the Verified Amended Complaint.

*Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367 (S.D. Fla. 2011), upon which Defendants attempt to rely, is distinguishable. In *Bentley*, the plaintiff simply alleged that "Defendants" called him multiple times a day in violation of Sections 559.72(7) and 559.72(18), without specifying which defendant made the purportedly harassing calls. *See id.* at 1373. The court dismissed without prejudice the plaintiff's FCCPA claims, noting that it was "inconceivable . . . that both Defendants could have somehow made each alleged call" and concluding that the plaintiff had therefore failed to give the defendants fair notice of the purported conduct they were alleged to have committed. *See id.* That confusion does not arise here, where Plaintiffs have clearly and unequivocally alleged that it was Orange Lake that placed the calls, for itself and/or on behalf of Condominium Association.

The allegations in the Amended Complaint are more than adequate to give Defendants fair notice of the precise nature of the violations claimed against them. The Court, therefore, will not dismiss the Amended Complaint on the basis that some allegations combine the Defendants.

### B.     Sufficiency of Allegations against Condominium Association (All Counts)

Defendants argue that all the claims asserted against Condominium Association should be dismissed. *First*, with regard to all Counts, Defendants argue that Plaintiffs have failed to adequately allege that Defendants were acting in concert or that Orange Lake was the agent or employee of Condominium Association. *Second*, with regard to Counts I and II, Defendants argue that Plaintiffs have failed to allege that Condominium Association made any telephone calls directly to Plaintiffs, and the relevant FCCPA provisions do not permit a plaintiff to bring a suit against an entity that is communicating on behalf of another entity. *Finally*, also with regard to Counts I and II, Defendants argue that Plaintiffs have failed to allege that Condominium Association communicated in writing with either of the Plaintiffs.

These arguments are without merit. To begin with, the Court disagrees that Plaintiffs have failed to adequately allege that Defendants were acting in concert or that there was an agency relationship between Orange Lake and Condominium Association. The allegations in the Verified Amended Complaint, along with the attached exhibits, permit the Court to draw the reasonable inference that there existed an agency relationship between the two entities. *See, e.g.*, Ex. C1-C2 to Compl. (a letter from Orange Lake seeking to collect the balance of an account with Condominium Association). Moreover, the allegations in the Verified Amended Complaint presuppose such a relationship. *See, e.g.*, Compl. ¶ 23 ("Defendant [Orange Lake]—itself and/or *on behalf of Defendant [Condominium Association]*—called Plaintiff Nicolo's Cellular

6

Telephone") (emphasis added). That Orange Lake was Condominium Association's agent or employee can be reasonably inferred from these and other allegations.

Next, with regard to whether Plaintiffs have adequately alleged that Condominium Association engaged in any telephonic communications with Plaintiffs, the Court agrees that Plaintiffs have only alleged that Orange Lake made certain telephonic communications "on behalf of" Condominium Association. However, Defendants are incorrect in asserting that, in order to state a claim under Sections 559.72(7) and 559.72(18), a plaintiff must allege that the defendant directly communicated with the plaintiff.

Defendants' argument appears to be premised on the fact that Part VI of Chapter 559 does not expressly provide for "on behalf of" liability. Nothing in the statute, however, *prohibits* "on behalf of" liability. Rather, Sections 559.72(7) and 559.72(18) simply provide that, in collecting consumer debts, no person shall:

> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.
>
> (18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

Fla. Stat. § 559.72. Moreover, Defendants' argument is undermined by the FCCPA's broad definition of "communication" as "the conveying of information . . . directly *or indirectly* to any person through any medium," Fla. Stat. § 559.55(2)[2] (emphasis added). Indeed, in accordance

---

[2] The parties' submissions refer to the previous version of the FCCPA, which defines "communication" at Section 559.55(5) (2011). For the sake of clarity, and because there are no

7

with the FCCPA's broad definition of "communication," this Court has interpreted the FCCPA to *permit* "on behalf of" liability. *See Kelliher v. Target Nat'l Bank*, 826 F. Supp. 2d 1324, 1329-30 (M.D. Fla. 2011) (denying the defendant's motion to dismiss the plaintiff's Section 559.72(18) claim where the plaintiff alleged that the defendant used a third party to send debt collection communications to the plaintiff despite knowing that the plaintiff was represented by counsel, because such actions constituted indirect communications).

Finally, the Court disagrees with Defendants' contention that the March 11, 2014 collection letter does not constitute a written communication between Condominium Association and Plaintiffs for purposes of Plaintiffs' FCCPA claims. In order to constitute a "communication" for purposes of the FCCPA, a person or entity need only be "conveying [] information regarding a debt directly or indirectly to any person through any medium." Fla. Stat. § 559.55(2). Defendants argue that the March 11 letter does not constitute a written communication between Condominium Association and Plaintiffs because it does not reference Condominium Association attempting to collect a debt or reflect that Condominium Association is a "creditor" or is requesting payment. Defendants add that the letter was written on Orange Lake letterhead, refers only to non-party "Wilson Resort Management Corp.," and directs payment to "Capital Mgmt. Maintenance."

Defendants' arguments are all unavailing. *First*, as Plaintiffs note, the March 11 letter conveys information regarding the alleged debt—it includes the Plaintiffs' Account Number, balance, and payment information. *See* Ex. C1 to Compl. *Second¸* on its face, the letter appears to have been sent on behalf of Condominium Association. *See id.* (beginning with "[w]e would like to discuss some issues related to the outstanding balance of your account with [*Condominium*

---

differences relevant for purposes of this opinion and order, the Court has updated the references to the most recent version of the statute (2014).

*Association*]," and noting that "Wilson Resort Management Corp. *acts as an agent for* [*Condominium Association*] to conduct this collection process.") (emphases added). By the plain language of Section 559.55(2), the March 11 letter, as alleged, thus qualifies as a communication (specifically, one that is written and indirect) between Condominium Association and Plaintiffs. That the letter was written on Orange Lake letterhead, refers to "Wilson Resort Management Corp.," or directs payment to "Capital Mgmt. Maintenance," is not determinative because those facts fail to undermine that the letter conveyed debt information and was sent on behalf of Condominium Association.

In sum, the Court finds Defendants' arguments as to the (in)sufficiency of the allegations against Condominium Association to be without merit. The Court, therefore, will not dismiss the claims asserted against Condominium Association on these grounds.

C. **Sufficiency of Allegations of Abuse or Harassment (Count I)**

Defendants next argue that Count I should be dismissed because Plaintiffs have inadequately alleged abusive or harassing behavior. *First*, Defendants argue that the March 11 letter does not constitute abuse or harassment. *Second*, Defendants contend that the allegations relating to the telephone calls are too conclusory to support a claim for abuse or harassment.

The Court is not persuaded. Plaintiffs have alleged that Defendants made over 48 calls to their cellular phones and places of work in a span of approximately 18 days, or approximately 2.5 calls per day. *See* Compl. ¶ 92. Moreover, the alleged calls were made after the Plaintiffs explicitly requested that all communications be directed to counsel. Although a claim under Section 559.72(7) is separate and distinct from a claim under Section 559.72(18), Plaintiffs' request that Defendants communicate solely with counsel was also an implicit request that Defendants cease communications with Plaintiffs.

9

The alleged volume of calls, coupled with Plaintiffs' request to cease communications, is sufficient to state a claim under Section 559.72(7). *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985) ("Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury."); *Brandt v. I.C. Sys., Inc.*, Case No. 09-cv-126, 2010 WL 582051, at *3 (M.D. Fla. Feb. 19, 2010) (denying the defendant's motion for summary judgment as to the plaintiff's Section 559.72(7) claim where 101 calls were made in a span of two months, or approximately 1.5 calls per day); *compare Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1338 (M.D. Fla. 2011) (denying relief under analogous provision of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because the defendant made "no more than one call per day, and no more than one call every two days"); *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (granting the defendant's motion for summary judgment as to claim brought under analogous FDCPA provision because the plaintiff never requested that the communications cease or even spoke with the defendant). The fact that Plaintiffs have failed to describe the substance of the calls is therefore not material at this stage of the litigation.

Further, Defendants' argument regarding the March 11 letter is plainly without merit. As is clear from the Verified Amended Complaint, Plaintiffs' Section 559.72(7) claim does not rest solely on the fact that Defendants sent them a single debt collection letter, but rather is based upon the totality of Defendants' debt-collection communications, including both the telephone calls and the letter. It is therefore irrelevant whether that letter, standing alone, constitutes abusive or harassing behavior.

### D.     Availability of Declaratory Judgment and/or Declaratory Relief

Defendants finally argue that Plaintiffs' demand for declaratory relief should be stricken because declaratory relief is not available under the alleged causes of action.  Defendants also contend that Plaintiffs are not entitled to seek declaratory relief because they have failed to allege that their rights continue or are likely to be burdened in the future, or that they are likely to be subject to future injury.  *See Walden v. Centers for Disease Control and Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012) (in order to have standing to seek declaratory relief, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future") (quotation marks and citation omitted).

Defendants are incorrect.  To begin with, as a general matter, declaratory relief is available as a remedy to the alleged FCCPA and TCPA violations.  *See* 28 U.S.C. § 2201; Fla. Stat. § 559.77(2).  Further, Plaintiffs have alleged facts that would support a substantial likelihood of non-speculative, future injury.  Specifically, Plaintiffs have alleged that, after they informed Defendants of their representation by counsel in July 2013, Defendants still attempted to contact them directly to collect the Debt over 48 times, on a near-daily basis, until August 2013.  *See* Compl. ¶ 92.  Plaintiffs have further alleged that, even after *again* informing Defendants of their representation by counsel in August 2013 and receiving assurances that Defendants would not engage in future direct communications, Defendants nevertheless sent them a debt collection letter in March 2014.  *See id.* ¶¶ 69-70.  These allegations undermine Defendants' contention that any possible injury ended in August 2013, and permit the Court to draw the reasonable inference that there is a substantial likelihood of non-speculative, continuing and/or future injury.

The situation here is thus unlike that in *Walden* or *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342 (11th Cir. 1999), upon which Defendants attempt to rely.  In *Walden*, the

plaintiff sought a declaration that the defendant had violated her First Amendment rights when it terminated her employment. *See Walden*, 669 F.3d at 1283. In affirming the district court's grant of summary judgment to the defendant, the Eleventh Circuit noted that the plaintiff only sought relief for a past injury—"[s]he does not allege that her religious rights continue to be burdened or are likely to be burdened in the future." *Id.* at 1284. Under such circumstances, the Eleventh Circuit held, the plaintiff lacked standing to seek declaratory relief because any declaration "would be nothing more than a gratuitous comment without any force or effect." *Id.* (quotation marks, alteration, and citation omitted). Likewise, in *Malowney*, the Eleventh Circuit held that, because there was no reasonable basis to believe that the plaintiffs' funds would be frozen again, the plaintiffs lacked standing to seek a declaration that certain provisions of Florida's post-judgment garnishment statute were unconstitutional. *See Malowney*, 193 F.3d at 1345, 1348. Here, as alleged, the Court can reasonably infer that Defendants intend to continue with their efforts to collect the Debt directly from Plaintiffs, regardless of whether Plaintiffs are represented by counsel. Plaintiffs may therefore seek declaratory relief.

Finally, to the extent Defendants are suggesting that Plaintiffs must plead a separate cause of action to obtain declaratory relief, *see* Doc. 25 at 5, they are also incorrect. Declaratory relief can be a *remedy*, rather than a cause of action. *See* 28 U.S.C. § 2201 (entitled "Creation of *remedy*"); Fla. Stat. § 559.77 (entitled "Civil *remedies*") (emphases added). Plaintiffs, accordingly, are not required to plead a separate cause of action to seek declaratory relief. *See Dennis v. Regional Adjustment Bureau, Inc.*, Case No. 09-cv-61494, 2010 WL 3359369, at *4 (S.D. Fla. July 7, 2010) (denying the defendant's motion for summary judgment as to the plaintiff's separate count for declaratory relief relating to alleged violations of the TCPA and FCCPA, but

noting that "it would have been better for Plaintiff to have sought equitable relief under those corresponding sections of her Complaint").

## IV.     CONCLUSION

Defendants' contentions as to the insufficiency of the Verified Amended Complaint are all without merit.  Accordingly, it is hereby **ORDERED**:

1. Defendants' Motion to Dismiss the Verified Amended Complaint and Motion to Strike the Demand for Declaratory Judgment and/or Declaratory Relief (Doc. 13) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on February 18, 2015.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any